**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TODD LATIMER,**

    Plaintiff,

v.                                            Case No. 8:06-cv-1921-T-30AEP

**ROARING TOYZ, INC., et al.,**

    Defendants.
_____/

## **ORDER**

Plaintiff Todd Latimer commenced this action alleging copyright infringement against the Defendants. Defendants Hachette Filipacchi Media U.S., Inc. ("Hachette") and Kawasaki Motors Corp, U.S.A.'s ("Kawasaki") have brought before the Court their Renewed Motion for Partial Summary Judgment (Dkt. 131). Latimer has filed a response in opposition (Dkt. 142). Hachette seeks summary judgment on its affirmative defense of fair use. Both Hachette and Kawasaki seek summary judgment on the issue of damages related to Latimer's claims for indirect profits. The Court, having considered the motion and response and being otherwise advised on the premises, concludes that summary judgment is denied as to fair use and granted as to the claims for indirect profits.

### **Background**

In January 2006, as part of their marketing activity to introduce the new ZX-14 motorcycle to the public, Kawasaki engaged Roaring Toyz, Inc. to customize two ZX-14

motorcycles. The customized motorcycles were to be displayed alongside the standard production model during Daytona Bike Week.

At about this time, Latimer, a professional photographer, was retained by *2Wheel Tuner* magazine to follow the progress of Roaring Toyz customization of the ZX-14 motorcycles. Latimer's assignment was to provide photographs of the motorcycles at various stages of the customization process for inclusion with a magazine article.

By the end of February 2006, Roaring Toyz had nearly completed the customization work. Around that time, Kawasaki was putting together final preparations for the ZX-14 World Press Introduction, to be held in Las Vegas on February 26-28, 2006. Kawasaki requested photographs of the customized bikes to be included in a press kit handed out to the members of the media who attended the Press Introduction meeting. After first submitting unsatisfactory images, Roaring Toyz contacted Latimer on February 23, 2006, and asked that he take photographs of the customized bikes. Latimer agreed to conduct a photo shoot that night to meet Kawasaki's February 24, 2006 deadline. On the morning of February 24, 2006, Latimer emailed a selection of digitally edited photos of the customized ZX-14 motorcycles to Roaring Toyz. Each of the digital images contained a metadata[1] file that provided technical information and a copyright notice for the photograph. Roaring Toyz immediately emailed the images to Kawasaki.

---

[1] Metadata, commonly described as "data about data" is defined as "a set of data that describes and gives information about other data. Oxford English Dictionary.

At the press launch on February 26, 2006, Kawasaki distributed a press kit to approximately 30 members of the media. The press kit contained, among other items, a compact disc with more than 110 photographs of the ZX-14, including five of Latimer's photographs with the metadata attached. A representative of *Cycle World* magazine, which is published by Hachette, attended the meeting and received one of the media kits. In conjunction with an article about the launch of the ZX-14, Cycle World published three of Latimer's photographs in its June 2006 issue. Two of the pictures were printed with the article and the other picture was placed on the Table of Contents page.

According to Latimer, he learned of the allegedly infringing uses of his photographs when he read a copy of the June 2006 issue of Cycle World. Believing that confronting Defendants about the unauthorized use of his photographs would be "professional suicide," Latimer delayed taking any action until late August 2006, when he contacted Kawasaki and informed it that his photographs were being used without his permission.

Latimer filed his original complaint on October 18, 2006. On October 27, 2006, he filed an amended complaint alleging copyright infringement and unfair competition against all Defendants. In an order dated August 7, 2008, the Court granted summary judgment to all Defendants on Latimer's unfair competition claims. As to Latimer's copyright infringement claims, the Court granted summary judgment to Hachette and Kawasaki but denied summary judgment to Roaring Toyz and Robert Fisher. The Court held that Latimer granted an implied license to Kawasaki to use his photographs in its press materials and that Hachette's subsequent publication of the photographs was fair use.

Latimer appealed this Court's grant of summary judgment to Kawasaki and Hachette on the copyright infringement claims. The Eleventh Circuit held that this Court properly found that Latimer granted an implied license to Kawasaki to use his copyrighted photographs but that there remains a factual issue as to the scope of the implied license. The Eleventh Circuit also reversed the grant of summary judgment to Hachette on the ground that fair use must be raised as an affirmative defense. The case was remanded to this Court for further proceedings.

Since the mandate from the Eleventh Circuit was issued, and with leave of this Court, Hachette amended its answer and affirmative defenses to include the affirmative defense of fair use. Now before the Court is Hachette and Kawasaki's renewed motion for partial summary judgment. Hachette asserts that its use of Latimer's photographs constitutes fair use as a matter of law. Hachette and Kawasaki also contend that, regardless of whether Hachette's use is fair, Latimer's claims for indirect profits from each of these defendants are too speculative to present a triable issue of fact for a jury.

**Summary Judgment Standard**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be

no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in his or her favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Chelates*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49. This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a question for the fact finder. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**Discussion**

**I.      Fair Use**

A copyright grants to the owner several exclusive rights, including the right to reproduce the copyrighted work and to distribute copies to the public. But under the fair use doctrine, codified at 17 U.S.C. § 107, some limited and useful forms of copying and distribution are tolerated as exceptions to copyright protection. Specifically, § 107 provides fair use may be made of material "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." The four factors considered to determine whether a use is a fair use are:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "[N]either the examples of possible fair uses nor the four statutory factors are to be considered exclusive. *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1308 (11th Cir. Fla. 2008). Moreover, all factors are to be considered and weighed together. *Id.* No single factor is dispositive. And each case should

be decided on its own facts. *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 560 (U.S. 1985).

### A.     Purpose and Character of the Use

"The 'purpose and character of use' factor in the fair use inquiry asks whether the work's purpose was for profit or not for profit and to what extent the new work is transformative and does not simply 'supplant' the original work." *Peter Letterese,* 533 F.3d at 1309. Commercial and non-transformative uses tend to weigh against a finding of fair use. *Id.* But "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 579 (U.S. 1994).

The use of Latimer's photographs in a magazine available for public purchase and open to paid advertising is a commercial use. However, the focus of the commercialism inquiry is whether the secondary user stands to profit from the use without paying the customary price. *Harper & Row*, 471 U.S. at 562. Latimer's photographs were not selected to generate a profit. They were used inside the magazine to make the pages more visually appealing. But the photos were not intended to increase the sale of magazine. Therefore, the commercial nature of the use does not weigh heavily against a finding of fair use.

However, *Cycle World's* use of Latimer's photographs is not significantly transformative. A transformative use "adds something new, with a further purpose or different character, altering the first [work] with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. A non-transformative use "merely supersedes the objects of the

original creation." *Id.* (internal quotations omitted). Here, Latimer's photos were intended to showcase the customized versions of the ZX-14 and that is how the photos were used in *Cycle World* magazine. Plus, there was minimal editing of the photos; they appeared in the magazine with substantially the same appearance as the originals. Therefore, the balance of the sub-factors weigh slightly against a finding of fair use.

### B.   Nature of the Copyrighted Work

The purpose of the second factor is to provide more protection for works that are "closer to the core of copyright protection." *Peter Letterese,* 533 F.3d at 1312. Original, creative works merit more protection than more factual or derivative works. *Id.* There is no dispute at this point in the proceedings that Latimer's photographs are creative works, which receive greater protection under copyright law.

### C.   Amount and Substantiality of the Portion Used

The third factor "recognizes that fragmentary copying is more likely to have a transformative purpose than wholesale copying." *Davis v. Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. N.Y. 2001). Use of the entirety of an original work is less likely to be a fair use. But where the secondary copier uses only as much as needed to further its purpose, this factor weighs neither in favor of nor against a finding of fair use. *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 24 (1st Cir. P.R. 2000). As noted before, *Cycle World* used the majority of the three photos, with only minor cropping. But use of any smaller portion of the photos would have rendered them useless. Therefore, this factor is not weighed significantly in the Court's analysis.

### D.     Effect of the Use on the Potential Market

The fourth factor requires the Court to consider the effect of the secondary copier's use on the potential market for the works at issue. *Peter Letterese,* 533 F.3d at 1315. "We must consider two inquiries: (1) 'the extent of the market harm caused by the particular actions of the alleged infringer,' and (2) 'whether unrestricted and widespread conduct of the sort engaged in by the defendant [] would result in a substantially adverse impact on the potential market.'" *Id.* (quoting *Campbell*, 510 U.S. at 590).

As to the issue of the market harm caused by the publication of Latimer's photos in *Cycle World*, Hachette argues that there was no effect on the marketability of the particular photos at issue. Specifically, Hachette notes that other Latimer photographs, not at issue here, were published in *2Wheel Tuner* magazine at about the same time that *Cycle World* ran its story featuring Latimer's photographs. Hachette also points to numerous other photos of customized ZX-14 motorcycles published in other magazines. However, the question is not whether other similar photos could be sold in the future. Rather, it is whether *Cycle World's* publication impaired the market for the specific photos it used. *Nunez*, 235 F. 3d at 24-25. That question is left unanswered by the record here. Also left unanswered by the record is the effect widespread conduct, like that of Cycle World, would have on the potential market for the photos. These factual questions prevent the Court from granting summary judgment on Hachette's affirmative defense of fair use.

## II.     Hachette and Kawasaki's Indirect Profits

In his complaint, Latimer claims damages under 17 U.S.C. §504(b), which provides that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. §504(b).  Though the Eleventh Circuit has never ruled on this issue, virtually every other Court of Appeals "has required some nexus between the infringing activity and the gross revenue figure proffered by a plaintiff." *Ordonez-Dawes v. Turnkey Props., Inc.*, 2008 U.S. Dist. LEXIS 24320 (S.D. Fla. Mar. 26, 2008).

A low initial burden is placed on the copyright holder to make a showing of some causal connection between the infringement and the profits claimed.  "[A] plaintiff may not seek gross revenues based entirely on a speculative connection to the plaintiff's claim." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1280 (M.D. Fla. 2008).  Here, Latimer's attempt to show a causal link is too speculative.

In his response to the motion for summary judgment, Latimer states that he seeks Kawasaki's profits for the sales of the ZX-14 motorcycles and Hachette's profits from the

sale of two issues of *Cycle World* magazine[2]. Latimer has not produced sufficient non-speculative evidence of any link between Kawasaki's alleged infringement (the use of five of Latimer's photos in their media kit) and the profits generated from the sale of the ZX-14 motorcycle. Latimer claims that his photos were central to Kawasaki's marketing plan. But the record shows that, in fact, the use of his photos was an afterthought. Kawasaki planned to showcase the motorcycles customized by Roaring Toyz. However, Kawasaki did not think of using photographs of the customized bikes until February 23, 2006, three days before the press launch. The use of five of Latimer's photos in the media kit, which featured over 100 other photographs, was a last minute decision.

Latimer also claims that Kawasaki exceeded their sales projection, possibly implying a relationship between that and the use of his photographs. However, Latimer misstates the evidence in the record. In fact, Kawasaki did not exceed their sales goal; it only met the goal. Plus, any link between reaching the sales goal and Latimer's photographs is purely speculative. Latimer has offered no evidence that shows any connection between the use of his photographs and the meeting of the sales goal.

Nor has Latimer produced non-speculative evidence of a link between Hachette's use of three of his photographs and the sale of the June 2006 issue of *Cycle World* magazine. Latimer simply argues, in a footnote, "since Hachette used Latimer's photos to drive consumer interest and purchasing decisions, the causal connection requirement has been

---

[2] There are references in the record to the publication of Latimer's photographs in *Cycle World's* Annual Sport Bike Edition. No such allegation is included in the complaint and Latimer has not moved to amend the complaint to add this claim.

fulfilled..." (Dkt. 142, p. 19 n. 14). However, Latimer provides no evidence to support this conclusory assertion.

Latimer has failed to meet his burden to show a reasonable relationship between the profits he seeks and the alleged infringement of his copyrighted photographs. Therefore, summary judgment must be granted as to Latimer's claims for indirect profits from Hachette and Kawasaki. Latimer may continue to pursue his claim for actual damages.

It is therefore ORDERED AND ADJUDGED that Hachette Filipacchi Media U.S., Inc. and Kawasaki Motors Corp, U.S.A.'s Motion for Partial Summary Judgment (Dkt. 131) is GRANTED IN PART and DENIED IN PART as stated above.

**DONE** and **ORDERED** in Tampa, Florida on September 21, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2006\06-cv-1921.msj 131.wpd